ORIGINAL

# In the United States Court of Federal Claims

No. 17-1163C
Filed: January 5, 2018

FILED

JAN - 5 2018

U.S. COURT OF
FEDERAL CLAIMS

```
******************************************
                                         *
                                         *
                                         *
NATHANIEL ERSKINE ROLLE,                 *
                                         *
         Plaintiff, pro se,              *
                                         *
v.                                       *
                                         *
THE UNITED STATES,                       *
                                         *
         Defendant.                      *
                                         *
                                         *
                                         *
******************************************
```

**Nathaniel Erskine Rolle**, Folkston, Georgia, Plaintiff, *pro se*.

**Geoffrey Martin Long**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.


## MEMORANDUM OPINION AND FINAL ORDER
## GRANTING THE GOVERNMENT'S MOTION TO DISMISS

**BRADEN**, *Chief Judge*.

## I.   RELEVANT FACTUAL BACKGROUND.[1]

On or about May 4, 2014, Nathaniel Erskine Rolle, a Bahamian national, was at sea aboard a vessel registered under the flag of the Commonwealth of the Bahamas.  Compl. Att. A at 2. Although it was dark outside, the vessel was not using headlights.  Compl. Ex. 5a at 1.

---

[1] The relevant facts discussed herein were derived from the August 28, 2017 Complaint ("Compl."), an attached "Writ of Habeas Corpus" ("Compl. Att. A"), and nine exhibits ("Compl. Exs. 1a–7a").

At approximately 1:00 AM, when the vessel reached latitude 20°31'03.0"N and longitude 73°00'04.0"W,[2] a United States Coast Guard ("Coast Guard") crew spotted Mr. Rolle's vessel and attempted to contact it by radio, without a response, and observed "bales of apparent narcotics being jettisoned from the vessel." Compl. Exs. 5a, 6a.

The Coast Guard contacted Bahamian authorities to request that the United States be permitted to exercise jurisdiction over the vessel, pursuant to 46 U.S.C. § 70502(c)(1)(C)[3] and 18 U.S.C. § 2237(d),[4] to investigate whether the vessel was engaged in drug trafficking. Compl. Att. A at 2; Compl. Ex. 5a at 2. When the Bahamian authorities authorized jurisdiction, the Coast Guard again radioed to the vessel, directing it to stop and allow the Coast Guard crew to board the vessel. Compl. Att. A at 4. Around 2:00 AM, Mr. Rolle's vessel was intercepted at latitude 20°32'08.0"N and longitude 73°03'08.0"W. Compl. Ex. 6a.

Thereafter, the Coast Guard searched the vessel and surrounding area where the bales of apparent narcotics were jettisoned and recovered approximately 1,895 pounds of contraband that tested positive for marijuana, together with 35 kilograms of contraband that tested positive for cocaine. Compl. Ex. 1a at 3; Compl. Ex. 6a at 2. Mr. Rolle and others aboard the vessel were detained and arrested, but were not read their *Miranda* rights at that time. Compl. Att. A at 4. The Coast Guard sank Mr. Rolle's vessel, and transported Mr. Rolle and the others to the United States. Compl. Att. A. at 4.

---

[2] Whether the vessel was within Bahamian territorial waters is disputed. The August 28, 2017 Complaint alleges that the vessel was at sea within Bahamian territorial waters (Compl. Att. A at 4), but Exhibit 5a and the stated coordinates show that the vessel was found "in international waters approximately 26 nautical miles north of Isle de la Tortue, Haiti" (Compl. Ex. 5a).

[3] That statute provides that "a vessel registered in a foreign nation[,] if that nation has consented or waived objection to the enforcement of a United States law by the United States[,]" is subject to the jurisdiction of the United States. 46 U.S.C. § 70502(c)(1)(C) (2012).

[4] That statute provides, in relevant part,

(a)(1) It shall be unlawful for the master, operator, or person in charge of a vessel of the United States, or a vessel subject to the jurisdiction of the United States, to knowingly fail to obey an order by an authorized Federal law enforcement officer to heave to that vessel.
(2) It shall be unlawful for any person on board a vessel of the United States, or a vessel subject to the jurisdiction of the United States, to-
(A) forcibly resist, oppose, prevent, impede, intimidate, or interfere with a boarding or other law enforcement action authorized by any Federal law or to resist a lawful arrest; or
(B) provide materially false information to a Federal law enforcement officer during a boarding of a vessel regarding the vessel's destination, origin, ownership, registration, nationality, cargo, or crew.

18 U.S.C. § 2237(a) (2012).

Mr. Rolle and two others who were aboard the vessel were tried in the United States District Court for the Southern District of Florida and, on August 4, 2014, Mr. Rolle was convicted of conspiracy to possess with intent to distribute five kilograms or more of cocaine and 100 kilograms or more of marijuana, pursuant to 46 U.S.C. §§ 70503(a), 70506(b), and for failing to obey a lawful order, pursuant to 18 U.S.C. § 2237(a)(1). Compl. Att. A at 1–2. Thereafter, Mr. Rolle's conviction was affirmed in *United States v. Wilchcombe*, 838 F.3d 1179, 1185 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 2265 (2017), and he was sentenced to 135 months in prison. Compl. Att. A at 2.

## II.    PROCEDURAL HISTORY.

On August 28, 2017, Mr. Rolle ("Plaintiff") filed a Complaint ("Compl."), captioned "Petition for a Writ Habeas Corpus," in the United States Court of Federal Claims, alleging that: (1) the Coast Guard lacked jurisdiction to detain him, because he was detained and apprehended in Bahamian waters, in violation of the United States Constitution and a treaty between the United States and the Commonwealth of the Bahamas; (2) the Coast Guard violated the Fifth Amendment to the United States Constitution by failing to advise Plaintiff of his *Miranda* rights before and immediately after the apprehension; (3) the Coast Guard violated Plaintiff's constitutional rights by failing to contact the Bahamian government "as to [their] abduction of a Bahamian [c]itizen;" and (4) Plaintiff is a Bahamian citizen who has been deprived of the rights and liberty owed him by the Bahamian government. Compl. at 6–8. The August 28, 2017 Complaint also requested relief in the form of "immediate release from confinement by the United States." Compl. at 8.

On September 27, 2017, the Government filed a Motion To Dismiss ("Gov't Mot.") the August 28, 2017 Complaint, pursuant to Rule of the United States Court of Federal Claims ("RCFC") 12(b)(1).

On October 17, 2017, Plaintiff filed a Response to the Government's September 27, 2017 Motion To Dismiss ("Pl. Resp."). On October 25, 2017, the Government filed a Reply ("Gov't Reply").

## III.   DISCUSSION.

### A.    Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*,

386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government." *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (quoting *Testan*, 424 U.S. at 400). Plaintiff also must make "a non-frivolous allegation that [he] is within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008).

**B.     Relevant Legal Standards.**

**1.     Under RCFC 12(b)(1).**

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

**2.     Standard Of Review For *Pro Se* Plaintiffs.**

*Pro se* plaintiffs' pleadings are held to a less stringent standard than those of litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers"). The United States Court of Federal Claims traditionally examines the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995) ("The fact that [the plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be.").

In addition, a *pro se* plaintiff, is not excused from his burden of proving, by a preponderance of the evidence, that the court possesses jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) ("[The plaintiff] must allege in his pleading the facts essential to show jurisdiction."); *see also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[The *pro se* plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence."). The *pro se* plaintiff cannot rely solely on allegations in the complaint, but must bring forth relevant, adequate proof to establish jurisdiction. *See Reynolds*, 846 F.3d at 748 ("[I]t was incumbent upon [the *pro se* plaintiff] to come forward with evidence establishing the court's jurisdiction."); *Zulueta v. United States*, 553 F. App'x 983, 985 (Fed. Cir. 2014) ("[T]he leniency afforded to a [*pro se*] litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.") (quotation and citation omitted).

C.     **The Government's September 27, 2017 Motion To Dismiss.**

1.     **The Government's Argument.**

The Government argues that Plaintiff did not meet the burden to establish that the court has subject matter jurisdiction over the claims alleged in the August 28, 2017 Complaint, because it seeks a writ of habeas corpus, although the United States Court of Federal Claims does not have "jurisdiction to grant habeas corpus relief." *Meeks v. United States*, 2007 WL 5172431, at *3 (Fed. Cl. Aug. 6, 2007); *see also Emerson v. United States*, 123 Fed. Cl. 126, 129 (Fed. Cl. 2015) ("[T]o the extent that [a] complaint seeks a writ of habeas corpus from this [c]ourt, it must be dismissed for lack of subject matter jurisdiction."). Congress authorized the United States District Courts with jurisdiction to adjudicate a petition for a writ of habeas corpus. *See* 28 U.S.C. § 2241 (2012) (authorizing that the district courts, the United States Courts of Appeals, and the United States Supreme Court have jurisdiction to issue writs of habeas corpus); *see also Ledford v. United States*, 297 F.3d 1378, 1381 (Fed. Cir. 2002) ("[T]he habeas statute does not list the Court of Federal Claims among those courts empowered to grant a writ of habeas corpus[.]"). In addition, Congress did not authorize the United States Court of Federal Claims to "review convictions in criminal cases . . . [or to] review the decisions of district courts or the clerks of district courts relating to proceedings before those courts." *Harris v. United States*, 2017 WL 3707927, at *4 (Fed. Cir. Aug. 29, 2017) (internal citations and quotation marks omitted).

In sum, the United States Court of Federal Claims does not have jurisdiction to adjudicate the claims alleged in the August 28, 2017 Complaint. Gov't Mot. at 4.

2.     **Plaintiff's Response.**

Plaintiff responds that the United States Court of Federal Claims has "exclusive jurisdiction over all claims arising over [c]ivil petitions under the Constitution, federal laws, or treaties of the United States." Pl. Resp. at 3. Plaintiff, therefore, reasons that the court also was authorized to adjudicate a writ of habeas corpus, particularly since 28 U.S.C. § 2241(c)(3) provides jurisdiction "over petitions . . . alleging that a prisoner is 'in custody' in violation of the Constitution or Laws or Treaty of the United States." Pl. Resp. at 4. This custody requirement is jurisdictional. *See Stacey v. Warden, Apalachee Corr. Inst.*, 854 F.2d 401, 403 (11th Cir. 1988) ("Although a petitioner need not be physically 'in custody' for subject matter jurisdiction to attach, . . . the state must exercise some control over the petitioner to satisfy the 'in custody' requirement[.]" (citations omitted)). Moreover, the United States Court of Federal Claims has "jurisdiction upon any claim for damage by any person unjustly convicted of an offense against the United States and imprisoned." Pl. Resp. at 4 (quoting 28 U.S.C. § 1495 (2012)). In this case, Plaintiff has been injured by the deprivation of his liberty. Pl. Resp. at 4.

Plaintiff argues that his claims contemplate violations of federal law over which this court has jurisdiction, because they arise from "violations of the Maritime Contractual Agreement" between the United States and the Bahamas, as well as constitutional violations, because the Coast Guard failed to advise Plaintiff of his *Miranda* rights. Pl. Resp. at 5. The "Maritime Contractual Agreement" is a contract between the United States and the Bahamas, and Plaintiff's Bahamian citizenship "binds him to the laws and Constitution[] of the Bahamas Government and the Maritime Contractual Agreement." Pl. Resp. at 6. Under the Contract Disputes Act, 41 U.S.C. §§

7101–7109 (2012), the United States Court of Federal Claims has exclusive jurisdiction over contractual disputes involving the United States. Pl. Resp. at 6. Therefore, the court has jurisdiction over Plaintiff's claims that arise from a breach of the "Maritime Contractual Agreement." Pl. Resp. at 6.

In addition, Plaintiff argues that the August 28, 2017 Complaint is based on deprivations of his rights and liberty owed to him by the Bahamian government. Pl. Resp. at 5.

### 3.    The Government's Reply.

The Government replies that, "irrespective of the source of law," the August 28, 2017 Complaint only seeks release from confinement, not money damages. Gov't Reply at 3. Although Plaintiff's October 17, 2017 Response alleges that any agreement between the Bahamas and the United States is a contract, the August 28, 2017 Complaint does not allege "any of the elements of an enforceable contract, [*i.e.*], a mutual intent to contract including an offer, an acceptance, consideration, and facts sufficient to establish that the contract was entered into with an authorized agent of the United States who had actual authority to bind the United States." Gov't Reply at 3 n.1 (citing *Crewzers Fire Crew Transp., Inc. v. United States*, 111 Fed. Cl. 148, 157 (Fed. Cl. 2013), *aff'd*, 741 F.3d 1380 (Fed. Cir. 2014)).

### 4.    The Court's Resolution.

The United States Court of Federal Claims has jurisdiction under the Tucker Act to adjudicate monetary claims against the United States founded upon the Takings Clause of the United States Constitution, Acts of Congress, regulations, or contracts, and requires a money-mandating act to confirm jurisdiction. *See* 28 U.S.C. § 1491(a)(1) (2012); *see also United States v. Mitchell*, 463 U.S. at 215–18. To establish subject matter jurisdiction over a complaint, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *Todd*, 386 F.3d at 1094 ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act.").

The August 28, 2017 Complaint, however, requests a writ of habeas corpus, under 28 U.S.C. § 2241 (2012). Compl. at 1 ("Petition For A Writ Of Habeas Corpus Under 28 U.S.C. § 2241"). That statute, however, grants specific federal courts authority to issue a writ of habeas corpus; the United States Court of Federal Claims is not among the courts enumerated therein. *See* 28 U.S.C. § 2241(a) (2012) ("Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."). Nor is the United States Court of Federal Claims a district court. *See Ledford*, 297 F.3d at 1382. Accordingly, the United States Court of Federal Claims is not empowered to grant a writ of habeas corpus, and any petition for the same exceeds the court's subject matter jurisdiction. *See Ledford*, 297 F.3d at 1380–81; *see also Emerson*, 123 Fed. Cl. 129 ("[Where a] complaint seeks a writ of habeas corpus from [the Court of Federal Claims], it must be dismissed for lack of subject matter jurisdiction.").

The alternative bases for asserting jurisdiction over the claims alleged in the August 28, 2017 Complaint are insufficient. First, the August 28, 2017 Complaint alleges that the United States Court of Federal Claims has jurisdiction over "any claim for damage[s] by any person unjustly convicted of an offense against the United States and imprisoned[.]" Pl. Reply at 4 (citing 28 U.S.C. § 1495 (2012)). A precondition for Tucker Act jurisdiction is the identification of a source of law that mandates the payment of money for the wrong alleged. *Mitchell*, 463 U.S. at 216–17. Because the August 28, 2017 Complaint does not seek money damages or identify a separate, money-mandating remedy, 28 U.S.C. § 1495 does not authorize the court to adjudicate the claims.

Second, Plaintiff invokes the Contract Disputes Act of 1978 ("CDA"), Pub. L. No. 95-563, 92 Stat. 2383 (1978) (codified as amended at 41 U.S.C. §§ 7101–7109 (2012)), as the basis for adjudicating a breach of contract claim arising from a maritime agreement between the United States and the Bahamas. Pl. Reply at 6–7. Plaintiff appears to argue that, as a remedy for that alleged breach, the court may order Plaintiff's release from incarceration, because under the Tucker Act, "as an incident of and collateral to any . . . judgment, [the court may] issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States." Pl. Reply at 6–7 (quoting 28 U.S.C. § 1491(a)(2) (2012)).

But, the CDA's purpose is "to provide for the resolution of claims and disputes relating to Government contracts awarded by executive agencies." Pub. L. No. 95-563, 92 Stat. 2383 (1978). And, "[u]nless otherwise specifically provided[,] . . . [the CDA] applies to any express or implied contract . . . entered into by an executive agency for . . . (1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair, or maintenance of real property; or[] (4) the disposal of personal property." 41 U.S.C. § 7101(a) (2012).

The Agreement between the United States and the Bahamian governments concerns "cooperation in maritime law enforcement" regarding "the complex nature of the problems of illicit trafficking in narcotics and psychotropic substances by sea and air, and the unsafe transport and smuggling of migrants." Compl. Ex. 7a. Therefore, it is neither a procurement contract nor a contract for the disposal of property, so the CDA does not apply.

For these reasons, the court has determined that it does not have jurisdiction to adjudicate the claims alleged in the August 28, 2017 Complaint.

## IV.     CONCLUSION.

For these reasons, the court grants the Government's September 27, 2017 Motion To Dismiss. *See* RCFC 12(b)(1).  The Clerk of the United States Court of Federal Claims is directed to enter judgment on behalf of the Government.

**IT IS SO ORDERED.**

_____
**SUSAN G. BRADEN**
**Chief Judge**